568 So.2d 937 (1990)
Morris KLEINFELD, Appellant,
v.
STATE of Florida, Appellee.
Nos. 88-2091, 89-1978.
District Court of Appeal of Florida, Fourth District.
September 5, 1990.
Rehearing and Certification Denied November 8, 1990.
*938 Philip G. Butler, Jr., and John F. Tierney, III, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellee.
SALMON, MICHAEL H., Associate Judge.
Sua Sponte the above appeals are hereby consolidated for purposes of opinion only.
Morris Kleinfeld was convicted of first degree murder. His direct appeal (Case No. 88-2091) and his appeal of the order denying his motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 (Case No. 89-1978) were argued together. Because we reverse Kleinfeld's conviction on account of the failure to permit him to represent himself in the trial court, the post-conviction relief motion becomes moot.
In December, 1987, the defendant was indicted for committing first-degree murder. He appeared before a trial judge, represented by counsel, and sought release on bond pending trial. During the hearings on this motion, medical evidence was presented claiming that the 72 year old defendant was diabetic, impotent, anemic, had bleeding hemorrhoids and bleeding ulcers which led to partial removal of his stomach, had one heart attack and could have another at any time, and was a "time bomb" who should avoid stress at all costs. The motion for bond was denied.
The defendant requested that he be allowed to represent himself. On May 27, 1988, the court conducted a hearing in accordance with Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) at the conclusion of which the court announced that it would allow the defendant to represent himself. In accordance with approved procedure, the court ordered that the attorneys who had until then represented the defendant remain as standby counsel to assist and advise the defendant.
At an appearance before the court some month and a half later, another lawyer, who had been chosen by the defendant to be his advisory counsel, was present. A number of things occurred at the hearing; the final result was that the court reversed its prior ruling regarding Mr. Kleinfeld's self-representation, the new advisory lawyer became counsel of record, and the defendant's request that he be allowed to represent himself was denied.
The matter proceeded to trial. The defendant was represented by counsel, convicted by a jury, and sentenced accordingly. Following the judgment, the defendant moved for post-conviction relief pursuant to Fla.R.Crim.P. 3.850.
The question in this case is not whether the defendant has a right to represent himself in a criminal case, but under what circumstances that right may be taken from him, and what proceedings must attend the revocation of that right once granted.
The Sixth Amendment to the Constitution of the United States has been interpreted to grant the right of self-representation in criminal cases. Article I, Section 16 of the Constitution of the State of Florida specifically provides that the accused in criminal prosecutions shall have the right "to be heard in person, by counsel or both... ." No one in this case denies that the right of self-representation exists. *939 Following a hearing pursuant to Faretta, the trial judge granted Kleinfeld his right of self-representation after concluding that he had voluntarily and intelligently elected to waive his right to counsel. However, even though a state may not constitutionally force a lawyer upon an accused, there may be circumstances in which the right may be denied. See Robinson v. State, 368 So.2d 674 (Fla. 1st DCA 1979); Ausby v. State, 358 So.2d 562 (Fla. 1st DCA 1978); Keene v. State, 420 So.2d 908 (Fla. 1st DCA 1982). Inquiry should be made to determine whether unusual circumstances exist which would cause the accused to be deprived of a fair trial if permitted to conduct his own defense. If found, the accused may be denied his right to self-representation.
In this case, the right of self-representation was withdrawn for what appears to be reasons of health. The fundamental problem is that it was done without a hearing. There had been earlier proceedings which dealt with the defendant's state of health, but at the time of the proceeding during which the trial judge required that Kleinfeld be represented by counsel no evidence was presented.
We have concluded that a hearing was necessary in order to determine whether unusual circumstances were present to deprive Kleinfeld of his constitutional right to represent himself after it was determined that he had intelligently and voluntarily waived his right to counsel. We have not been cited to any case, nor have we independently found any case, that decides whether or not the condition of a defendant's health constitutes such a circumstance. We do not know the condition of Kleinfeld's health, and leave it to the trial court to make that determination. We note, however, that the right of self-representation is an important one, and that courtroom schedules may be adapted to accommodate many conditions; it is done often to accommodate attorneys, parties, and court schedules. This opinion should not be construed to hold that the state of a defendant's health may or may not constitute one of the unusual circumstances that may deprive a defendant of a fair trial by allowing him to represent himself. What we are holding is that before a defendant's health can be determined to be such an unusual circumstance, an evidentiary hearing must be held.
Because this case must be returned, we will comment upon an evidentiary question which will undoubtedly be raised again. Kleinfeld became an instant suspect in this case because the victim, Eric Golden, had represented his wife in an acrimonious marital dissolution case. Howard Friedman represented Kleinfeld in the dissolution matter as well as during the investigation into Golden's death. Approximately one month after the murder, Kleinfeld called Friedman principally to express his dissatisfaction with pleadings filed by Friedman in the matrimonial action. During that telephone conversation, Kleinfeld stated to Friedman something similar to: "They know I did Eric. I've got nothing to lose by doing you and then turning the gun on myself." This statement was admitted over the claim of attorney-client privilege. Friedman had been previously summoned before the grand jury, and had inquired of the Florida Bar as to whether or not the privilege precluded him from disclosing the contents of the statement. Much has been made in this case about the Rules of Professional Conduct and what may or may not be disclosed under the ethical standards covered by those rules, but we believe the question of admissibility of evidence is covered by the Florida Evidence Code, section 90.502, Florida Statutes (1988). There is a provision in the ethical rules governing lawyers that permits a lawyer to reveal a confidence if the lawyer believes it is necessary to prevent a client from committing a crime or to prevent a death, but there is no similar provision in the evidence code. The ethical rules do not modify the evidence code. The Florida Evidence Code states that there is no lawyer-client privilege when the services of the lawyer are sought or obtained to enable or aid anyone to commit or plan to commit a crime. Section 90.502(4)(a), Florida Statutes (1988). This is a different concept than the one contained in the rules governing the ethical *940 conduct of a lawyer. Because the other requirements to support a claim of lawyer-client privilege had been met, we hold that it was error to admit Friedman's testimony.
As a new trial must be granted for the reasons stated in this opinion, the other matters raised by the direct appeal need not be addressed; the issues raised by the appeal from denial of the motion for post-conviction relief are accordingly moot.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
DELL and GUNTHER, JJ., concur.